KLIEBERT, Judge,
concurring.
Although I concur in the majority’s ruling, i.e., the trial judge did not err in refusing to give the defendant a complete discharge or probation from the Feliciana Forensic Facility, I do not fully subscribe to the majority’s reasoning in arriving at the conclusion.
The treating psychiatrist expressed the opinion Stewart was not a danger to himself or others “due to mental illness or defects. ” In his August 7, 1984 judgment which was the subject of the prior appeal of this case to this court[1] the trial judge said: “According to the criteria set forth in Jackson v. Foti,[2] continued commitment is justified only if dangerousness to self or others is a result of mental illness or defect. ” At the close of the latest hearing (October 11, 1985) the trial judge said his reasons for denying the defendant’s release or probation were those given in the August 7th, 1984 judgment as well as those given for the present judgment. After each hearing the trial judge concluded the defendant failed to carry his burden of proving he could be discharged or released on probation without danger to himself or others.
Based on a careful study of the entire record, I conclude, as apparently the trial judge did, that notwithstanding the opinion of the treating psychiatrist, continued confinement of the defendant is justified because the defendant is dangerous to himself and others because of mental illness or defects. Although the standard for continued confinement under a civil commitment may be otherwise, in my view, where a defendant has been committed because accused of criminal acts but cannot be tried because he is unable to assist his counsel or has been convicted of criminal acts but absolved of responsibility therefor because of insanity, the decision as to whether the criteria of Jackson, supra, are present so as to justify continued confinement rests in *234 the courts, not in the medical institution to which the defendant was committed. See State of Louisiana v. Ricky Perez, 487 So.2d 671 (5th Cir.1986). The medical opinion as to the causes of the defendant’s actions are of extreme importance and cannot be treated lightly by the courts; nevertheless, it must be the judge who decides whether a defendant who has been absolved of criminal responsibility because of insanity can be returned to society without undue risk to himself or society.
Here the majority opinion, based on the language of Code of Criminal Procedure Article 657, concluded the sole criteria for continued confinement is “a danger to himself or society,” regardless of the cause of the dangerousness. Thus, under the majority view there would be one standard for commitment, i.e., “dangerous to himself or others due to mental illness” and a different standard for continued confinement, i.e., simply, “dangerous to himself or others.” Doing so raises serious issues as to whether the double standard violates the defendant’s constitutionally guaranteed rights of liberty and due process where the defendant has been accused of but not convicted of the criminal acts. Moreover, it raises a serious question here as to whether under the majority’s reasoning it should not have remanded or addressed the question as to the defendant’s mental capacity to assist his counsel in his defense at the time of the commitment or in the subsequent proceedings.[3] (See Code of Criminal Procedure Article 642). Absent a prior conviction of criminal acts (by trial or by bargained plea) in my view the majority’s standard for continued confinement — “dangerous to himself or society” — would be violative of the defendant’s rights guaranteed by the Constitution.

. State v. Stewart, 467 So.2d 1324 (5th Cir.1985).

. 670 F.2d 516 (5th Cir.1982).

. The record before us does not show whether it was judicially determined that the defendant was able to assist counsel in his defense or could knowingly waive his rights to a trial by entering a plea of "not guilty by reason of insanity" both of which were necessary for his initial commitment without trial. The record before us indicates a sanity commission was appointed and two physicians submitted reports showing the defendant was capable of assisting counsel in his defense but there is no indication a hearing was conducted in which the defendant’s status was determined. Rather, there is some indication that prior to a hearing a subsequent sanity commission was appointed and would have reported defendant was unable to assist counsel, but before their reports were submitted the state and defense counsel agreed to a bargain plea of “not guilty by reason of insanity” which served as the basis for the commitment.